UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN DONALD,

      Plaintiff,

v.

CRAIG CIESZKOWSKI, *et al.*,

      Defendants.

Case No. 17-cv-12190
Hon. Matthew F. Leitman

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF ## 12, 21)

Plaintiff Allen Donald brings this action under 42 U.S.C. § 1983 against three City of Ecorse police officers. (*See* Complaint, ECF #1.) Donald alleges that officers Craig Cieszkowski, William Marks, and Jarrod Fedea violated his Fourth Amendments rights by using excessive force when they arrested him. The officers have now moved for summary judgment. (*See* Motions, ECF ## 12, 21.) For the reasons explained below, the officers' motions are **DENIED**.

**I**

**A**

Donald offered the following version of events. At approximately 3:00 a.m. on July 21, 2014, Cieszkowski, Marks, and Fedea were dispatched to the home of Rose Greeley in the City of Ecorse. (*See* Donald Dep., ECF #14-2 at Pg. ID 255.)

1

At that time, Rose was involved in an altercation with her daughter, Seretha Greeley. Seretha is the mother of Donald's son. (*See id.* at Pg. ID 256.) Donald says that a neighbor alerted him to the dispute between Rose and Seretha, and Donald went to Rose's home in order to get his son. (*See id.* at Pg. ID 257.) When Donald arrived, the officers were already on the scene. (*See id.*)

At some point, Donald and Cieszkowski began "bickering back and forth." (*Id.*) Cieszkowski then complained that Donald and others in the vicinity were "acting like animals." (*Id.*) Donald responded to that comment by cursing at Cieszkowski, and Fedea then ordered Donald to leave Rose's residence. (*See id.*) Donald complied with that command and walked "up the street." (*Id.*)

A short time later, Donald returned and began standing across the street from Rose's house with a group of people who lived in the neighborhood. (*See id.* at Pg. ID 261-62.) Donald was watching the events at Rose's house and was not saying anything to the officers. (*See id.* at Pg. ID 263.) The officers then crossed the street and approached Donald. (*See id.*) Donald says that when the officers approached him, he did not say anything to them and that his hands were out in front of him in the "surrender position." (*Id.* at Pg. ID 263-64, 274.) Cieszkowski then "came up to" Donald from "about eight or ten feet away and bang, tased [him] right in the chest." (*Id.* at Pg. ID 274.) The tasing "shocked" Donald and stopped him from moving. (*Id.*) Cieszkowski then "bull rushed" Donald and "slammed" him to the

ground. (*Id.* at Pg. ID 264, 274; S. Greeley Trial Testimony, ECF #14-5 at Pg. ID 300, 308-09.) Donald says that Cieszkowski's actions caused him to "blank[] out" and lose consciousness. (Donald Dep., ECF #14-2 at Pg. ID 264.)

At some point while Donald was on the ground, prone and unconscious, all three officers began beating him. (*See* S. Greeley Trial Testimony, ECF #14-5 at Pg. ID 300, 308-09.[1]) One of the officers hit him with a nightstick, one hit him with a flashlight, and all three hit him with their fists. (*See id.*) Donald was not resisting and "not reacting" in any way while he was on the ground and the officers were beating him. (*Id.* at Pg. ID 300, 310.) Indeed, "he wasn't even conscious" and "wasn't even responding" at that time. (*Id.* at Pg. ID 310.)

The officers then began to "drag" Donald towards a police car. (*Id.* at Pg. ID 301.) At around that same time, gunshots went off in the vicinity. (*See id.*) Cieszkowski then threw Donald forcibly back onto the ground with such force that

---

[1] This portion of Donald's version of events is based on the testimony of Seretha from Donald's criminal trial. At the hearing before the Court, the officers' counsel argued that Seretha did not testify that all three officers participated in the beating. Counsel stressed that Seretha never specifically identified the officers and said only that "they" beat Donald. According to the officers' counsel, when Seretha testified that "they" were beating Donald, she could have been referring to only two of the officers. Counsel therefore insisted that it would be pure speculation to conclude that all three officers beat Donald while he was on the ground. However, Seretha testified that "three" officers approached Donald and that "they" then "started beating" him. (S. Greeley Trial Testimony, ECF #14-5 at Pg. ID 299-300.) When viewed in Donald's favor, this testimony could reasonably be construed as referring to all three officers.

it "result[ed] in a left side[] facial injury." (ECF #12-5 at Pg. ID 143-44.)  Once the gunfire was over, the officers physically placed Donald in a police car and "took him away." (S. Greeley Trial Testimony, ECF #14-5 at Pg. ID 301.)

Donald suffered serious injuries as a result of his encounter with the officers. Those injuries included "multiple facial fractures" and a "prominent laceration" on his face. (Medical Records, ECF #14 at Pg. ID 284.)

**B**

The officers tell a far different story.  According to the officers, after they arrived at Rose's house and attempted to "gain information from Rose about the incident," Donald "began yelling obscenities" and threatened to fight them. (Police Rpt., ECF #12-3 at Pg. ID 126-27.[2])  The officers then instructed Donald "several times to leave the area." (*Id.* at Pg. ID 127.)  Donald eventually complied with that command, but he returned a short time later and stood across the street from the officers. (*See id.*)

Donald thereafter "continued to yell at [the] officers, causing [] residents to exit their homes." (*Id.*)  He also continued to threaten the officers and invited them to come "fight" him. (*Id.*)  As "a crowd began to form" around Donald, the

---

[2] The Court cites the officers' version of events from the police report in order to provide context and background related to the July 21 incident.  The Court is not holding that any portion of the police report is competent evidence for the purpose of resolving the officers' summary judgment motion.

"[o]fficers approached Donald as he clenched his fists and raised them above his waistline." (*Id.*) Cieszkowski then ordered Donald to turn around and place his hands behind his back. (*See id.*) Donald refused to comply with that command and "stated several times he wished to participate in a physical confrontation." (*Id.*) Cieszkowski then "deployed" his taser, which struck Donald in the chest "causing temporary muscle disruption." (*Id.*) Cieszkowski and Fedea then took Donald to the ground. (*See id.*) While Donald was on the ground, "[o]fficers [] had to force Donald's hands behind his back [because] he actively resisted [the] officers by pulling his hands in front of his body." (*Id.*)

As the officers attempted to handcuff Donald, gunshots went off in the vicinity. (*See id.*) A group of people then began "running up to where officers were on the ground with Donald." (*Id.*) "Donald continued to resist the officers and kick as officers attempted to order the crowd back." (*Id.*) "Donald was [then] handcuffed and officers had to pull him toward a police vehicle to secure him, as he was actively resisting and pulling away from the officers." (*Id.*) At that time, "[s]everal more gunshots went off." (*Id.*) The officers then "took cover and had to force Donald to the ground." (*Id.*) As "Donald continued to pull away and kick at officers, Donald's head struck the ground." (*Id.*) Finally, as the officers later attempted to put Donald into a police car, Donald continued to kick at the officers. (*See id.*) One of these kicks made contact with Marks and injured Marks' left arm and shoulder. (*See id.*)

## C

Donald was charged with four crimes arising out of the July 21 incident: three counts of assaulting, resisting, and obstructing a police officer pursuant to Mich. Comp. Laws § 750.81d(1) and one count of assaulting, resisting, and obstructing a police officer causing injury. (*See* Register of Actions, ECF #14-6 at Pg. ID 314.) Donald was first tried before a jury. The jury acquitted Donald of the assaulting, resisting, and obstructing a police officer causing injury count, but the jury could not reach a verdict on the three counts of assaulting, resisting, and obstructing a police officer. (*See id.*) Donald was thereafter re-tried on the assaulting, resisting, and obstructing counts in a bench trial. (*See id.*) At the conclusion of the bench trial, the state court made specific factual findings related to the assaulting, resisting, and obstructing charges against Donald:

> Number one, the three Ecorse Police Department officers were summonsed to 7th Street on July 21st, 2014 because of an altercation between Rose Greeley and her daughter, Seretha.
>
> Two, Seretha Greeley poured gasoline on her mother's furniture.
>
> Three, while at the Greeley house the officers had their first contact with the defendant Mr. Donald.
>
> Four, the officers and Mr. Donald exchanged words in this initial encounter and he was told by Corporal Fedea to leave which Mr. Donald did.

Five, the police were also occupied with Ms. Greeley because she was out of control, intoxicated, and beating a motor vehicle with a bat. There was a continuing police situation on 7th Street on July 21st, 2014 because of the fight between Ms. Greeley and her daughter which resulted in Ms. Greeley being taken into custody.

Six, Mr. Donald returned to the area on the opposite side of the street from Ms. Greeley's residence.

Seven, there was a crowd of people on the street at this point.

Eight, Mr. Donald continued to taunt the police officers.

Nine, as a result of Mr. Donald's taunts the crowd began to grow.

Ten, because of the growing crowd and continued taunts the officers determined that Mr. Donald was disturbing the peace and obstructing.

Number eleven, all three officers approached Mr. Donald.

Number twelve, Mr. Donald did not obey the lawful command to turn around and put his hands behind his back.

Thirteen, the officers were in their uniforms and arrived at the scene in fully marked police cars so the defendant knew they were police officers performing their duties.

Fourteen, Officer Cieszowski [sic] tased Mr. Donald.

Fifteen, Mr. Donald continued to struggle with the three officers as they attempted to handcuff him.

Sixteen, someone in the crowd began firing shots.

Seventeen, Officer Cieszowski [sic] admitted to forcibly throwing the defendant's face down on the ground when the shots were fired resulting in a left sided facial injury as depicted and described in the defendant's exhibit.

Eighteen, Mr. Donald continued to resist the efforts of the three police officers to put him in the police car.

(ECF #12-5 at Pg. ID 142-44.)  Based on these findings, the state court concluded "that the People ha[d] overcome the presumption of innocence and sustained their burden of proof beyond a reasonable doubt that [Donald] resisted and obstructed the three Ecorse police officers on the night of July 21st, 2014. The [c]ourt, therefore, [found Donald] guilty of three counts of police officer assaulting, resisting, and obstructing." (*Id.* at Pg. ID 144.)

## II

Donald filed this action against the City of Ecorse and officers Cieszkowski, Marks, and Fedea on July 5, 2017.[3] (*See* Compl., ECF #1.)  Donald claims that Cieszkowski, Marks, and Fedea "violated [his] constitutionally-protected rights, including his right to be free from excessive force." (*Id.* at ¶29, ECF #1 at Pg. ID 6.) Donald brings his excessive-force claims pursuant to 42 U.S.C. § 1983.

The officers first moved for summary judgment on January 12, 2019. (*See* Mot., ECF #12.)  In that motion, all three officers moved for summary judgment on

---

[3] On June 13, 2019, the Court entered a stipulated order dismissing with prejudice Donald's claims against the City of Ecorse. (*See* Stipulated Order, ECF #23.)

the basis that Donald's excessive-force claims are barred in their entirety by the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994) (*See id.* at Pg. ID 85, 105-08.) The officers insisted that under *Heck*, Donald's state-court convictions of assaulting, resisting, and obstructing a police officer preclude his excessive-force claims in this civil action. (*See id.*) In addition, and in the alternative, Marks and Fedea argued that they are entitled to qualified immunity with respect to Donald's claim that they beat him while he was on the ground unconscious. (*See id.* at Pg. ID 85, 103-05.) On June 4, 2019, Cieszkowski filed a second summary judgment motion in which he also argued that, in the alternative, he is entitled to qualified immunity related to Donald's claims of excessive force. (*See* Cieszkowski Mot., ECF #21.)

### III

The summary judgment standard is well-established. A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the

jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. "Credibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

## IV

The Court begins with the officers' argument that they are entitled to summary judgment based upon the Supreme Court's decision in *Heck, supra*. Under *Heck*, a plaintiff is barred from asserting a civil claim under Section 1983 that would "necessarily imply the invalidity" of an underlying criminal conviction or sentence. *Heck*, 512, U.S. at 487. The officers insist that Donald's excessive-force claims are barred here because they are inconsistent with, and imply the invalidity of, his state-court "conviction on three counts of violating [Mich. Comp. Laws] 750.81d(1)." (Mot., ECF #12 at Pg. ID 105.) The Court disagrees.

Under *Heck*, "[t]here are two circumstances [] in which an excessive-force claim might conflict with a conviction. The first is when the criminal provision makes the lack of excessive force an element of the crime. The second is when excessive force is an affirmative defense to the crime." *Schrieber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (internal citation omitted). In *Schreiber*, the Sixth Circuit held that (1) "[n]othing in the text of Michigan Compiled Laws § 750.81d(1) …

suggests that the state must prove as an element of the crime that the police did not use excessive force" and (2) any excessive force used by an officer during an arrest "would not provide [a criminal defendant] an affirmative defense to the charge of resisting arrest" under Michigan law. *Id.* at 334-35. Thus, under *Schrieber*, a Section 1983 excessive-force civil claim "does not challenge" an underlying Michigan conviction for resisting arrest and is not barred by *Heck*. *Id.* at 335.

The officers counter that *Schrieber* is no longer good law in light of the intervening decision of the Michigan Supreme Court in *People v. Moreno*, 814 N.W.2d 624 (Mich. 2012). In *Moreno*, the court held that the "lawfulness" of an arrest is an element of the crime of resisting or obstructing arrest. *See id.* at 626, 633-34. According to the officers, because the Michigan Supreme Court "has now held that a 'lawful arrest' is an element of the crime of resisting or obstructing a police officer … the holding in *Schreiber* no longer applies." (Mot., ECF #12 at Pg. ID 107.) Again, the Court disagrees with the officers.

Four different district judges of this court who have reviewed excessive-force claims after *Moreno* have each concluded that *Schreiber* remains good law. Indeed, each of those judges reached the same conclusion: even after *Moreno*, "a conviction under [Michigan's] resisting-arrest statute does not trigger *Heck's* bar to a § 1983 excessive-force suit." *Flanigan v. Panin*, 2017 WL 5709588, at ** 4-5 (E.D. Mich. May 2, 2017) (Michelson, J.). *See also Nelson v. Green Oak Township*, 2016 WL

11

233100, at *19 (E.D. Mich. Jan. 20, 2016) (Borman, J.) ("This Court concludes that Michigan courts would not find that *Moreno* compels the conclusion that a lack of excessive force is now an element of the crime of resisting under the Michigan statute. Accordingly, success on Plaintiff's § 1983 claim for excessive force would not necessarily imply the invalidity of her conviction for resisting arrest"); *Carter v. Carter*, 2017 WL 1160623, at ** 8-9 (E.D. Mich. Mar. 29, 2017) (same) (Lawson, J.), rev'd on other grounds, 2018 WL 1341663 (6th Cir. Mar. 15, 2018); *Knox v. Scruggs*, 2018 WL 1556238, at *1 (E.D. Mich. Mar. 30, 2018) (Drain, J.) (same).

As the court thoroughly explained in *Carter*:

> "[T]he Sixth Circuit has held that a conviction for resisting or obstructing arrest under Michigan Compiled Laws § 750.81d does not bar a subsequent excessive force claim under section 1983, because the statute does not require that the State prove or the defendant admit that the arresting officer did not use excessive force." *Steele v. Twp. of Flint*, No. 14-13640, 2015 WL 6470887, at *4 (E.D. Mich. Oct. 27, 2015) (citing *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)). "Nothing in the text of Michigan Compiled Laws § 750.81d(1) or § 750.92 suggests that the state must prove as an element of the crime that the police did not use excessive force." *Schreiber*, 596 F.3d at 334 (citing *People v. Ventura*, 262 Mich. App. 370, 686 N.W.2d 748, 752 (2004)). "Furthermore, [the state court decisions on point strongly suggest that] excessive force by the police is not a defense to a resisting-arrest conviction." *Ibid.* (citing *People v. Hill*, No. 283951, 2009 WL 1830750, at *3 (Mich. Ct. App. June 25, 2009)).
>
> Two district courts in this district that recently confronted the same question concluded that the central holding of

*Schreiber* remains good law, notwithstanding the intervening decision of the Michigan Supreme Court in *People v. Moreno*, 491 Mich. 38, 814 N.W.2d 624 (2012), where the court held that the "lawfulness" of the arrest is an element of the crime of resisting or obstructing arrest. Those courts found that, notwithstanding the need to prove "lawfulness" of the arrest, the decisions on point in Michigan suggest that an arrest may be "lawful" even if excessive force is used to accomplish it. *Johns v. Oakland County*, No. 15-12924, 2016 WL 4396065, at *5 (E.D. Mich. Aug. 18, 2016) (Michelson, J.) ("[T]he use of excessive force during or to effectuate an otherwise lawful arrest does not render the arrest unlawful. This in turn means that a conviction under the resisting-arrest statute does not trigger *Heck's* bar to a § 1983 excessive-force suit."); *Nelson v. Green Oak Township*, No. 14-10502, 2016 WL 233100, at *19 (E.D. Mich. Jan. 20, 2016) (Borman, J.) ("[S]uccess on Plaintiff's § 1983 claim for excessive force would not necessarily imply the invalidity of her conviction for resisting arrest.").

Those decisions are consistent with constitutional principles. Generally, the "lawfulness" of an arrest is measured by whether it was supported by probable cause. *See United States v. Campbell*, 486 F.3d 949, 953-54 (6th Cir. 2007) (quoting *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994)); *see also Florida v. Royer*, 460 U.S. 491, 497-501 (1983); *Lilly v. City of Erlanger*, 598 Fed.Appx. 370, 375-76 (6th Cir. 2015) ("[A] determination of probable cause to arrest depends simply on whether, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed an offense.") (quotation marks and alterations omitted). It follows, then that a police officer can make a "lawful" arrest—that is, one that is supported by probable cause—but still violate the arrestee's Fourth Amendment rights by effectuating that arrest through the use of excessive force. If the arrestee resists, and later is

> convicted of resisting that arrest, a subsequent lawsuit charging the arresting officer with excessive force would not "implicitly question the validity of [the] conviction," and therefore *Heck* would not bar the action.

*Carter*, 2017 WL 1160623, at ** 8-9.

For all of the reasons explained in *Flanigan*, *Carter*, *Nelson*, and *Knox*, and the cases cited therein, Donald's state-court convictions of assaulting, resisting, and obstructing a police officer under Mich. Comp. Laws § 750.81d(1) do not preclude his excessive-force claims against the officers in this civil action. The officers' motion for summary judgment on the basis of *Heck* is therefore denied.[4]

## V

The Court now turns to the officers' assertions that they are entitled to summary judgment on Donald's excessive-force claims based on qualified immunity.

---

[4] During the hearing on the officers' motion, the Court explored with the officers' counsel whether the state court's specific factual findings at Donald's criminal trial affect the Court's analysis under *Heck*. At the conclusion of this colloquy, the officers' counsel candidly acknowledged that if the Court (1) construed Seretha's testimony to be that all three officers beat Donald while he was on the ground unconscious and (2) adopted the *Heck* analysis as set forth in *Flanigan*, *Carter*, *Nelson*, and *Knox*, then the officers' motion under *Heck* would fail irrespective of the state court's factual findings. For all of the reasons explained above, the Court has construed Seretha's testimony to be that all three officers beat Donald, and it has adopted the *Heck* analysis as stated in *Flanigan*, *Carter*, *Nelson*, and *Knox*. The Court therefore need not undertake any analysis concerning the impact of the state court's factual findings on the officers' arguments under *Heck*.

14

**A**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Green v. Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Once raised, it is the plaintiff's burden to show that the defendant[] [is] not entitled to qualified immunity." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

The United States Court of Appeals for the Sixth Circuit "has generally used a two-step [qualified immunity] analysis: (1) viewing the facts in the light most favorable to the plaintiff, [the court] determines whether the allegations give rise to a constitutional violation; and (2) [the court] assesses whether the right was clearly established at the time of the incident." *Id.* (internal punctuation omitted). "[U]nder either prong [of this inquiry], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

**B**

**1**

The Court first addresses the assertion by Marks and Fedea that they are entitled to qualified immunity. The entirety of this argument consists of qualified-

immunity boilerplate and the following three sentences of legal analysis: "Plaintiff has made no allegation of wrongdoing as it relates to Fedea and Marks. In fact, Plaintiff has gone so far as to describe the officers as, 'professional.' Marks and Fedea, therefore, are entitled to summary judgment." (Mot., ECF #12 at Pg. ID 105.) The Court disagrees that Marks and Fedea are entitled to qualified immunity for two reasons.

First, Donald *has* made allegations of wrongdoing with respect to Marks and Fedea. Indeed, in Donald's Complaint, he alleges that Marks and Fedea "beat" him. (Compl. at ¶23, ECF #1 at Pg. ID 4.) And he has presented evidence, in the form of Seretha's testimony from his criminal trial, that Marks and Fedea beat him while he was on the ground unconscious and not resisting arrest. (*See* S. Greeley Trial Testimony, ECF #14-5 at Pg. ID 300, 308-09.) Simply put, the sole basis on which Marks and Fedea move for summary judgment – that Donald has not accused them of any wrongdoing – is inconsistent with the record.

Second, on this record, Marks and Fedea are not entitled to qualified immunity. As an initial matter, Donald has presented evidence that Marks and Fedea violated his constitutional right to be free from excessive force. "In determining whether an excessive force constitutional violation occurred, [courts] must look at the objective reasonableness of the defendant's conduct." *Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009). "Among the most important factors to consider in

determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Here, Donald has identified evidence that he was not a threat and was not actively resisting arrest when Marks and Fedea beat him as he was laying prone on the ground unconscious. (*See* S. Greeley Trial Testimony, ECF #14-5 at Pg. ID 300, 308-09.) And while there is some level of seriousness to Donald's initial offense of obstructing and resisting arrest, that does not overcome the fact that he was unconscious and not resisting at the time Marks and Fedea were beating him. If a jury credited Donald's version of events, it could reasonably conclude that Marks and Fedea violated Donald's constitutional rights when they beat him while he was unconscious and not resisting arrest. *See*, *e.g.*, *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394, 407 (6th Cir. 2009) ("Gratuitous violence inflicted upon an incapacitated [suspect] constitutes an excessive use of force") (internal quotation marks omitted); *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002) (concluding that facts, taken in plaintiff's favor, supported conclusion that defendant officer used excessive force when he "continu[ed] to beat [the suspect] after he had been neutralized"); *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)

(acknowledging that striking a motionless, unconscious suspect would constitute excessive force).

Next, Donald's right to be free from gratuitous force, like a forceful beating when he was unconscious and not resisting arrest, was clearly established at the time of the July 21 incident. *See*, *e.g.*, *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir. 1994) (unconstitutionality of use of gratuitous force against "helpless and incapacitated" suspect during arrest clearly established in 1991); *Morrison*, 583 F.3d at 408 ("In this Circuit, the law is clearly established that an officer may not use additional gratuitous force once a suspect has been neutralized"). For all of these reasons, Donald has identified evidence that creates a triable question of fact on his excessive-force claim against Marks and Fedea.

## 2

Marks and Fedea counter that the state court's factual findings at Donald's criminal trial compel the conclusion that they are entitled to qualified immunity.[5]

---

[5] There are substantial reasons to question whether the state court's factual findings should be given any preclusive effect in this action. That is because there is at least some ambiguity in the findings. For instance, as the officers' counsel acknowledged at the argument before the Court, it is not clear from the state court's findings what specific actions constituted the "assaulting, resisting, and obstructing" that resulted in Donald's conviction. Was Donald convicted of separately committing a single act of resisting/obstructing against each of the three officers? Or, was he convicted of committing three acts of resisting/obstructing against one of the officers? Despite these questions, for the purposes of this motion only, the Court will assume, without deciding, that the state court's factual findings are entitled to some preclusive effect.

(*See* Def.s' Supp. Br., ECF #19.)  Marks and Fedea appear to focus on the state court's factual finding that after Cieszkowski tased Donald, Donald "continued to struggle with the three officers as they attempted to handcuff him." (ECF #12-5 at Pg. ID 143.)  The officers assert that because Donald "continue[d] to struggle," they had a right to use force against him while he was on the ground, and they insist that they are entitled to qualified immunity related to that force.  The Court disagrees.

The state court's factual finding that Donald "continue[d] to struggle," as the officers attempted to handcuff him does not speak to (1) whether Donald was continuing to struggle when force was applied, (2) the level of force that was used, and (3) whether the extreme level of force that Marks and Fedea used here – beating Donald with fists, flashlights, and/or nightsticks after he had lost consciousness – was reasonable under the circumstances.  At most, the finding establishes that the officers were entitled to use *some* level of force at the moment Donald was struggling with the officers.  But even if some force was appropriate during the struggle, that does not mean that the officers could continue to use force, especially extreme force, after Donald lost consciousness and stopped struggling.  And Donald has produced evidence – through Seretha's sworn testimony – that Marks and Fedea used that extreme level of force after he lost consciousness and "wasn't even responding." (S. Greeley Trial Testimony, ECF #14-5 at Pg. ID 310.)  Simply put, the state court's finding that Donald continued to struggle for some unidentified period of time is not

necessarily inconsistent with, and does not preclude the Court from crediting, Seretha's testimony that the officers viciously beat Donald on the ground when he became unconscious and ceased struggling. Marks and Fedea are therefore not entitled to qualified immunity based on the state court's factual finding that Donald "struggle[d]" with the officers.

## C

The Court next turns Cieszkowski's motion that he is also entitled to summary judgment on the basis of qualified immunity. (*See* Cieszkowski Mot., ECF #21.) Cieszkowski insists that he is entitled to qualified immunity with respect to: (1) the tasing, (2) the beating of Donald while he was on the ground, and (3) any injuries Donald may have suffered as he was put into a police car. (*See id.*) The Court will address each incident of force separately.

## 1

Cieszkowski is not entitled to qualified immunity with respect to the tasing. When the Court views the evidence in the light most favorable to Donald, it concludes that at the time Cieszkowski tased Donald, Donald was unarmed, was not actively resisting or obstructing the officers, and his hands were up in the "surrender position." (Donald Dep., ECF #14-2 at Pg. ID 263-64, 274.) Under this view of the evidence, Donald posed no threat to the officers at the time of the tasing, and there was no reasonable justification for tasing him. Indeed, tasing a suspect under these

circumstances is a clearly-established violation of that suspect's constitutional right to be free from excessive force. *See*, *e.g.*, *Brown v. Weber*, 555 F. App'x 550, 554-55 (6th Cir. 2014) (holding that tasing a suspect who "posed little to no immediate threat to the safety of the officers or others" and who "was unarmed, not making verbal threats, and sitting … in the fetal position" violated the suspect's clearly-established constitutional rights); *Thomas v. Plummer*, 489 F. App'x 116, 125 (6th Cir. 2012) ("We have little trouble finding that a hypothetical reasonable officer would have known that tasing a suspect who is on her knees with her hands in the air is objectively unreasonable" and that such a tasing would violate the suspect's clearly-established rights) (internal quotation marks omitted).

Cieszkowski responds that the state court's factual findings entitle him to qualified immunity with respect to the tasing.  More specifically, Cieszkowski highlights the state court's finding that Donald "failed to comply with lawful commands to turn around and put his hands behind his back." (Cieszkowski Mot., ECF #21 at Pg. ID 526.)  According to Cieszkowski, because Donald refused to obey a lawful command, it was reasonable for Cieszkowski to tase him.  The Court disagrees.

In the Sixth Circuit, "the reasonableness of an officer's use of a taser turns on active resistance: When a suspect actively resists arrest, the police can use a taser [] to subdue him; but when a suspect does not resist, or has stopped resisting, they

cannot." *Kent v. Oakland County*, 810 F.3d 384, 392 (6th Cir. 2016). And the Sixth Circuit has held that where a suspect only "refuse[s] to comply with an officer's command," that refusal alone "does not resemble the continued resistance and hostility often present in our active resistance cases." *Id.* at 394 (internal quotation marks omitted). *See also Eldridge v. City of Warren*, 553 F. App'x 529, 534 (6th Cir. 2013) ("If there is a common thread to be found in our caselaw on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more"). That court has also held that it clearly established that a suspect who "refused to comply with commands" but "never demonstrated physical violence, and had his arms in the air … when tased[,] had a right to be free from the use of a taser." *Kent*, 810 F.3d at Pg. ID 397.

Here, the state court did not find that Donald was actively resisting at the moment Cieszkowski tased him. Instead, that court found that Donald merely did "not obey the lawful command to turn around and put his hands behind his back." (ECF #12-5 at Pg. ID 143.) The state court made no finding that Donald engaged in "physical violence" or subjected the officers to any direct threat of physical harm before Cieszkowski tased him. Thus, there was not the "something more" that the Sixth Circuit requires in cases where a tasing may be justified due to a suspect's "active resistance."

Cieszkowski counters that evidence other than the state court's findings establishes the "something more" that constituted "active resistance." Cieszkowski says that "[Donald] admits he was verbally hostile toward the officers." (Cieszkowski Mot., ECF #21 at Pg. ID 526.) And Cieszkowski insists that tasing a suspect does not violate that suspect's constitutional rights where "non-compliance with an order is 'paired with any signs of verbal hostility.'" (*Id.* quoting *Eldridge*, 533 F. App'x at 535.) But when the Court views the evidence in the light most favorable to Donald, it must conclude that Donald *did not* admit that he was verbally hostile towards the officers before being tased. On the contrary, Donald testified that when the officers approached him, he did not say anything to them. (Donald Dep., ECF #14-2 at Pg. ID 263-64.) Thus, the record does not support Cieszkowski's suggestion that Donald "admit[ted] [that] he was verbally hostile" immediately before being tased.[6]

---

[6] The Court acknowledges that the state court did find that *before* the officers crossed the street and approached Donald, Donald "taunt[ed]" the officers. (ECF #12-5 at Pg. ID 143.) But the state court's factual findings do not include any specific information about the taunts and do not, for example, indicate that the taunts were akin to the kind of "direct threat of physical harm" that could constitute active resistance in this Circuit. *Kent*, 810 F.3d at 395. More importantly, the state court's factual findings do not indicate that Donald continued to taunt the officers after they crossed the street and in the moments immediately before Cieszkowski tased Donald. The factual findings say only that at the time of the tasing, Donald "did not obey the lawful command to turn around and put his hands behind his back." Simply put, the state court did not make any finding that Donald said anything to the officers immediately before being tased or that he resisted in any other way at that time. (*See* ECF #12-5 at Pg. ID 143). Therefore, the state court's factual findings do not compel

For all of these reasons, Cieszkowski is not entitled to qualified immunity with respect to the tasing.

## 2

Cieszkowski is also not entitled to qualified immunity with respect to his alleged beating of Donald while Donald was on the ground. For all of the same reasons that the Court denied qualified immunity to Marks and Fedea related to that alleged beating (*see* Section V(B)(1) above), the Court concludes that Cieszkowski is not entitled to qualified immunity. Likewise, for all of the same reasons that the Court held that the state court's factual finding related to Donald's "struggl[ing]" with the officers did not save Marks and Fedea's claim for qualified immunity (*see* Section V(B)(2) above), that finding does not entitle Cieszkowski to qualified immunity.

## 3

Finally, Cieszkowski argues that he is entitled to qualified immunity "from any liability for any injuries suffered when [Donald] was placed in the squad car." (Cieszkowski Mot., ECF #21 at Pg. ID 527.) Cieszkowski's sole argument is that he "had nothing to do placing [Donald] in the squad car." (*Id.*)

---

the conclusion that Donald was "verbally hostile" to Cieszkowski immediately prior to the tasing.

This argument is a non-sequitur. Donald is seeking damages for injuries that he suffered when he was "forcibly [thrown] to the ground on his face." (Donald Resp. Br., ECF #22 at Pg. ID 546.) That happened before the officers physically "placed [Donald] in the squad car." Thus, even if Cieszkowski was not involved in physically placing Donald in the police car, that says nothing about Cieszkowski's involvement in throwing Donald forcibly to the ground at an earlier time. And Donald has presented evidence that Cieszkowski forcibly threw him to the ground at a time when he (Donald) was not actively resisting and may not have been conscious. (*See e.g.*, Donald Dep., ECF #14-2 at Pg. ID 264; S. Greeley Trial Testimony, ECF #14-5 at Pg. ID 309-310.) For all of the reasons stated above, the use of such force against a neutralized, non-resisting suspect would violate that suspect's clearly-established constitutional rights. *See*, *e.g.*, *Morrison*, *Phelps*, *Wysong*, *supra*. Cieszkowski is therefore not entitled to qualified immunity related to that incident of force.

## VI

For all of the reasons stated above, **IT IS HEREBY ORDERED** that the officers' motions for summary judgment (ECF ## 12, 21) are **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: July 2, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 2, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764